UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| GUMWOOD HP SHOPPING PARTNERS, L.P., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CAUSE NO. 3:11-cv-268 JD ) |
| SIMON PROPERTY GROUP, INC., | ) ) |
| Defendant. | ) ) |

**REPORT AND RECOMMENDATION**

On October 31, 2011, Defendant, Simon Property Group, Inc. ("Simon"), filed a motion to dismiss the complaint. On November 17, 2011, Plaintiff, Gumwood HP Shopping Partners, L.P. ("Gumwood"), filed its response. On December 12, 2011, Simon filed a reply. On June 7, 2012, the presiding judge referred the motion to dismiss to the undersigned to prepare a report and recommendation. For the following reasons, the undersigned **RECOMMENDS** that the Court **DENY** the motion to dismiss.

**I.    RELEVANT BACKGROUND**

On June 29, 2011, Gumwood filed a complaint against Simon for monopolization in violation of Section 2 of the Sherman Antitrust Act and for restraint of trade in violation of Section 1 of the Sherman Antitrust Act. According to the complaint, Gumwood is the owner and landlord of a retail property known as Heritage Square. Heritage Square is a "lifestyle shopping center" located in Mishawaka, Indiana. Simon is the owner of University Park Mall, a super-regional mall also located in Mishawaka, Indiana. Gumwood alleges that Simon interfered with its negotiations with retail tenants, in particular Ann Taylor LOFT and Coldwater Creek, causing

them to cease their dealings with Gumwood.

Gumwood alleges that Simon is the largest public U.S. real estate company, owning 382 properties comprising 245 million square feet of leasable area in North America, Europe, and Asia. Doc. No. 1 at 2. Simon is the largest landlord for many national retailers, including several of the retailers with whom Gumwood negotiated to secure as tenants for Heritage Square. Gumwood alleges that Simon has managed to raise its rents at its malls even in the recent recession, while its largest competitor was driven into bankruptcy. *Id.* at 2-3. Gumwood alleges that Simon routinely abuses its power by refusing to renew existing leases or making renewals conditioned upon the tenant not opening stores in a competing development in another market, requiring a tenant to relocate a store without giving it an opportunity to renew an existing lease as a means of preventing the tenant from opening a store in a competing center, and increasing rates or otherwise making the terms of renewal less favorable in retaliation for opening a store in a competing center. *Id.* at 3.

According to the complaint, in 1979, Simon built University Park Mall, which enjoyed its status as the dominant retail platform in the South Bend/Mishawaka area from its opening. *Id.* In 2008, Simon expanded and opened a 100,000 square foot open-air lifestyle component, the Village at University Park. *Id.*

In 2007, Gumwood opened Heritage Square, which was designed to be an open-air lifestyle center designed to attract upscale, national-chain specialty stores with dining and entertainment in an outdoor setting. *Id.* at 3-4. Gumwood entered into lease negotiations with a portion of what it alleges are "key tenants," including Ann Taylor LOFT, Lane Bryant/Cacique, White House Black Market, Brooks Brothers, Eddie Bauer, Chico's, Coldwater Creek, and

Aveda. *Id.* at 4. Gumwood also began negotiating with J. Jill, Franchesca's and Acorn. *Id.* Gumwood considered LOFT and Coldwater Creek as its most important potential clients because they would draw other stores to Heritage Square. Doc. No. 1 at 4-5. Co-tenancy provisions are common in retail leasing agreements to guarantee a select mix of stores that will attract more customers. *Id.* at 5. If a co-tenancy provision is not satisfied, the lease may not be binding or the landlord may have to offer a lower rent. *Id.* On August 16, 2006, after leases with some tenants had been executed, including LOFT and Coldwater Creek, Heritage Square was appraised at $46,300,000. *Id.*

Gumwood alleges that in 2005 it began negotiating with LOFT for a lease in Heritage Square, which was signed on June 14, 2006. *Id.* The LOFT lease attracted other tenants, such as Lane Bryant/Cacique and Coldwater Creek, and LOFT became a required co-tenant for some of the potential clients Gumwood was negotiating with. *Id.* at 6.

During that time, Ann Taylor operated a store at University Park Mall. *Id.* On June 25, 2006, the local newspaper published an article announcing that Ann Taylor was opening a LOFT store in Heritage Square. *Id.* On June 27, 2006, Gumwood executed the lease. *Id.* Gumwood alleges that Simon executives then promptly contacted Ann Taylor and pressured Ann Taylor to rescind its lease and not open a LOFT store at Heritage Square. Doc. No. 1 at 6. As a result, Ann Taylor asked to rescind its lease on June 28, 2006. *Id.* Gumwood refused and agreed to renegotiate the terms of the lease and amended the lease on August 16, 2006. *Id.* Ann Taylor took possession of the premises on that date and began construction of its LOFT store. *Id.* at 7.

Sometime after the lease was amended, Simon again contacted Ann Taylor to pressure it not to open its store at Heritage Square. *Id.* Ann Taylor then instructed its contractor to cease

operations at Heritage Square after one week of building. *Id.* Gumwood again renegotiated the terms of the lease and both parties agreed on April 20, 2007, but before Ann Taylor signed the lease, Simon again pressured it not to do so. *Id.* Although Ann Taylor refused to sign the second amended lease, it continued to negotiate with Gumwood. *Id.* In August 2007, Ann Taylor terminated its lease with Gumwood. *Id.* at 8.

In February 2008, Ann Taylor informed Gumwood that it had been negotiating with Simon to put a LOFT store at the University Park Mall, but that it had not finalized its negotiations because it still wanted to open at Heritage Square. *Id.* On June 22, 2008, the local newspaper reported that LOFT would open at University Park Mall and not Heritage Square. *Id.* In July 2008, Ann Taylor executed a lease with Simon to open a LOFT store at University Park's outdoor lifestyle center. *Id.*

Gumwood alleges that although some Ann Taylor executives believed that opening at Heritage Square was the right thing to do, they bowed to pressure and anti-competitive tactics employed by Simon. *Id.* at 9. In particular, Simon used other leases it was negotiating with Ann Taylor as leverage to force Ann Taylor to back out of its deal with Gumwood. *Id.* Gumwood alleges that Simon attempted to destroy it as a potential competitor by contacting other potential and signed tenants of Heritage Square and using Simon's market power to use anti-competitive tactics to pressure prospective tactics away from any deals with Heritage Square. *Id.* at 9-10. According to the complaint, Simon told other Heritage Square tenants and potential tenants that Ann Taylor would not open its LOFT store in Heritage Square despite the fact that it had Ann Taylor had signed a lease. *Id.* at 10.

Gumwood also alleges that Simon also interfered with its lease with Lane

4

Bryant/Cacique, which are owned by Charming Shoppes, Inc. *Id.* at 11-13. Gumwood alleges that Simon used similar pressuring tactics with Charming Shoppes as it had with Ann Taylor, and as a result, Charming Shoppes backed out of its deal with Gumwood. *Id.* at 13.

According to the complaint, Simon employed similar tactics with other stores, including Coldwater Creek, Eddie Bauer, and Acorn, often making false representations about the status of Ann Taylor's lease with Gumwood. *Id.* at 10-14.

Gumwood seeks damages in the form of lost rents and the diminution in value of Heritage Square as a result of the loss of tenants, as well as treble damages and attorney fees.

**II.    ANALYSIS**

Under Fed. R. Civ. P. 12(b)(6), dismissal of a complaint is appropriate when the complaint fails to allege a cause of action for which relief can be granted. Federal law only requires a plaintiff to provide a short and plain statement of the claim that the pleader is entitled to relief. Fed. R. Civ. P. 8; *see Bartholet v. Resihauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992) (A complaint should be "short and simple giving the opposing party notice while leaving the rest to further documents"). It is not necessary for a complaint to identify legal theories in order to state a claim or indicate each technical element of a legal theory that is identified. *Powell v. Fuijimoto*, 119 Fed. Appx. 803, 804 (7th Cir. 2004). A complaint that states a plausible claim for relief survives a motion to dismiss. *See Ashcroft v. Iqbal*, 129 S.Ct 1937, 1949-50 (2009); *see also Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007) (The pleading stage does not impose a probability requirement, it simply requires alleged facts to be plausible so as to entitle a person to relief even if recovery is remote and unlikely).

**A.    Count I: Monopolization and Attempted Monopolization**

Under the Sherman Antitrust Act, Section 2, "Every person who shall monopolize, or attempt to monopolize . . . any part of the trade or commerce among the several States . . . shall be deemed guilty of a felony . . . ." 15 U.S.C. § 2. Gumwood must allege two elements to allege monopolization: "(1) the possession of monopoly power in the relevant market, and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *U.S. v. Microsoft Corp.*, 253 F.3d 34, 50 (D.C. Cir. 2001). To allege attempted monopolization, Gumwood must allege that (1) the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power. *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447 (1993).

1. **Relevant Market**

Simon argues that Count I should be dismissed for several reasons. First, Simon argues that Count I should be dismissed because Gumwood has failed to allege a relevant market. To show a relevant market, a plaintiff must allege both a territory encompassed and a product involved. *Mullis v. Arco Petroleum Corp.*, 502 F.2d 290, 295 (7th Cir. 1974). Gumwood has satisfied both of these requirements. First, Simon does not challenge the geographic market, and Gumwood's complaint repeatedly discusses the South Bend/Mishawaka region as the territory in question. That satisfies the geographical market.

Second, Simon argues that Gumwood has failed to allege a relevant product. However, none of the cases it cited in support considered a motion to dismiss. *See Am. Key Corp. v. Cole Nat'l Corp.*, 762 F.2d 1569, 1578 (11th Cir. 1985) (summary judgment); *Net Realty Holding Trust v. Fanconia Props., Inc.*, 1983 WL 1786 (E.D.Va., Jan. 20, 1983) (decided at trial);

*Deauville Corp. v. Federated Dept. Stores, Inc.*, 1983 WL 1865 (S.D. Tex., Jul. 12, 1983) (decided by directed verdicts after trial); *Optivision, Inc. v. Syracuse Shopping Center Assoc.*, 472 F.Supp. 665 (D.N.Y. 1979) (preliminary injunction). The complaint alleges that University Park Mall is a "super-regional mall" that contains higher-end stores, and that Heritage Square is a lifestyle shopping center that is similarly designed to attract higher-end specialty stores. Furthermore, the retail industry recognizes certain submarkets defined by various types of shopping centers, such as "super-regional malls," "lifestyle centers," and "big-box" stores. Gumwood has alleged that "super-regional malls" and "lifestyle centers" compete because they are both part of the same market. As a result, Gumwood has sufficiently alleged a relevant product, namely lifestyle shopping centers.

## 2.      Substantial Market Foreclosure

Next, Simon argues that Gumwood fails to allege that Simon caused substantial market foreclosure. "In the context of exclusive dealing arrangements, this means that the plaintiff can prevail only by showing that the agreement in question results in a substantial foreclosure of competition in an area of effective competition, that is, in a relevant market." *Dos Santos v. Columbus-Cuneo-Cabrini Med. Ctr.*, 684 F.2d 1346, 1352 (7th Cir. 1982). "Because an exclusive deal affecting a small fraction of a market clearly cannot have the requisite harmful effect upon competition, the requirement of a significant degree of foreclosure serves a useful screening function." *U.S. v. Microsoft Corp.*, 253 F.3d 34, 69 (D.C. Cir. 2001).

Gumwood's complaint alleges that Simon engaged in anticompetitive tactics designed to induce exclusive deals. As a result, Gumwood must allege a substantial foreclosure of competition. "Courts routinely observe that 'foreclosure levels are unlikely to be of concern

7

where they are less than 30 or 40 percent.'" *B&H Medical, LLC v. ABP Admin., Inc.*, 526 F.3d 257, 266 (6th Cir. 2008) (citing *Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I.*, 373 F3d 57, 68 (1st Cir. 2004)). Gumwood has not alleged a specific percentage of market foreclosure, but Simon admits that a precise percentage need not be alleged. Doc. No. 25 at 21. Gumwood has alleged that its primary tenant, LOFT, was foreclosed as well as another significant tenant, Charming Shoppes, and that Simon has charged its tenants above-market rent because of exclusive dealing. Furthermore, Gumwood alleges that Simon has decreased competition in the market for high-end upscale retail space. As a result, Gumwood's complaint does not fail for lack of a "substantial foreclosure."

The Court reiterates that this is not a final decision on the merits of Gumwood's case. This is merely a judgment as to the sufficiency of the pleadings. Under the relevant standard, Gumwood must only state a plausible claim for relief to survive a motion to dismiss. *See Iqbal*, 129 S.Ct at 1949-50 (2009).

### 3. Competitive Harm

Third, Simon argues that Gumwood has failed to allege competitive harm. "The exclusion of competitors is cause for antitrust concern only if it impairs the health of the competitive process itself." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 394 (7th Cir. 1984). Antitrust law is concerned with activity that inhibits competition, not necessarily adverse actions against competitors. *See Id.* Gumwood must allege that "it is likely to keep at least one significant competitor of the defendant from doing business in the relevant market." *Id.* Gumwood must also allege "the probable (not certain) effect of the exclusion will be to raise prices above (and therefore reduce output below) the competitive level, or otherwise injure

8

competition; he must show in other words that the anticompetitive effects (if any) of the exclusion outweigh any benefits to competition from it." *Id.*

Gumwood has met this test. Gumwood has alleged that its Heritage Square shopping center has lost value and key tenants, namely LOFT and Charming Shoppes as a direct result of Simon's actions. Gumwood has alleged that Simon's actions have resulted in Heritage Square's partial exclusion in the market of retail shopping centers. Furthermore, Gumwood has alleged that Simon has raised its rents above the competitive level as a result of the exclusion.This is sufficient to satisfy the competitive harm allegation requirement.

### 4. Anticompetitive Conduct

Finally, Simon argues that Gumwood has failed to allege any predatory, exclusionary, or anticompetitive conduct by Simon. Neither the possession nor the pursuit of "monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive *conduct*." *Verizon Commun., Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004) (emphasis in original). In the Seventh Circuit, exclusionary, predatory, or anticompetitive conduct is "conduct that is in itself an independent violation of the antitrust laws or that has no legitimate business justification other than to destroy or damage competition." *The Great Escape, Inc. v. Union City Body Co.*, 791 F.2d 532, 541 (7th Cir. 1986).

Gumwood has alleged, at minimum, that Simon misrepresented the status of Ann Taylor's lease with Gumwood. Gumwood alleged that Simon told Gumwood's potential tenants that Ann Taylor would not open at Heritage Square when in fact it had already signed a lease and was beginning construction. Gumwood also alleged that Simon falsely stated that a LOFT store would be opening at University Park Mall, when no such lease had been signed. There is no

9

legitimate business justification for such a misrepresentation other than to harm Gumwood's Heritage Square. *See Id.* Furthermore, Gumwood has alleged a variety of other tactics that Simon used, which may not be anticompetitive, but Gumwood has alleged that they are. *See* Doc. No. 1 at 3 (describing three separate tactics including refusing to renew existing leases or making renewals conditioned upon the tenant not opening stores in a competing development in another market). This is legally sufficient pleading.

Again, the Court is not concluding that Simon engaged in anticompetitive conduct, only that Gumwood has adequately alleged anticompetitive behavior sufficient to survive a Rule 12(b)(6) attack. It is left to a later time to determine if Gumwood can prove its allegations.

Because Gumwood has alleged a relevant market, as well as substantial foreclosure, competitive harm, and anticompetitive conduct, Count I should not be dismissed.

### B. Count II: Restraint of Trade

"Every contract, combination in the form of trust or otherwise . . . in restraint of trade or commerce . . . is declared to be illegal." 15 U.S.C. § 1. To state a claim under this section, Gumwood must allege that Simon's actions restrained trade or commerce in the relevant market. *Gateway Contracting Servs., LLC v. Sagamore Health Network, Inc.*, 2002 WL 7316686, at *13-14 (S.D. Ind. 2002). Simon argues that Count II fails because Gumwood has failed to allege a relevant market, a substantial foreclosure, competitive harm, or anticompetitive harm. These are the very reasons Simon offered to dismiss Count I, which the Court has already discussed and rejected.

Furthermore, Gumwood has alleged that Simon's actions have restrained trade in retail shopping centers in the South Bend/Mishawaka region by inducing retail tenants to cease

negotiations with Simon's competitors. Gumwood has alleged that Simon achieved its aim by misrepresenting the status of Ann Taylor's lease with Gumwood. As a result, Gumwood has sufficiently pled Count II.

## III. CONCLUSION

Because Gumwood has sufficiently pled Count I by pleading a relevant market, substantial market foreclosure, competitive harm and anticompetitive conduct, and Count II in similar fashion, the undersigned **RECOMMENDS** that Simon's motion to dismiss be **DENIED.** [Doc. No. 24].

> **NOTICE IS HEREBY GIVEN that within fourteen (14) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER**.
>
> **SO ORDERED.**

Dated this 8th day of August, 2012.

 S/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge